UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kent Nielsen and
June Nielsen,

        Plaintiffs,

v.

U.S. Bank; Experian Marketing Solutions,
Inc.; and Trans Union, LLC,

        Defendants.

Civil No. 03-5313 (DWF/RLE)

**MEMORANDUM
OPINION AND ORDER**

---

James Walter Balmer, Esq., Falsani, Balmer, Peterson, Quinn & Beyer, 1200 Alworth Building, 306 West Superior Street, Suite 1200, Duluth, MN 55802, counsel for Plaintiffs.

Nick D. Campanario, Esq., Alpha B. Khaldi, Esq., Vernle C. Durocher, Jr., Esq., and Eric A. Ruzicka, Esq., Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402-1498, counsel for Defendant U.S. Bank

Gregory J. Myers, Esq., and William A. Gengler, Esq., Lockridge, Grindal, Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Matthew P. Silversten, Esq., Jones Day, 901 Lakeside Avenue, Cleveland, OH 44114, counsel for Defendant Experian Marketing Solutions, Inc.

Brian S. Kenworthy, Esq., Katz & Korin, 334 North Senate Avenue, Indianapolis, IN 46204-1708; and Joel T. Wiegert, Esq., Meagher & Geer, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, counsel for Defendant Trans Union, LLC.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 3, 2004, pursuant to Defendants U.S. Bank's ("U.S. Bank") Motion for Partial Summary Judgment and Experian Marketing Solutions, Inc.'s ("Experian") and Trans Union, LLC's ("Trans Union") Motions for Summary Judgment. Experian reached a settlement

with Plaintiffs Kent and June Nielsen prior to the hearing. Further, Plaintiffs conceded that summary judgment was appropriate as to one of their claims brought pursuant to the Fair Credit Reporting Act ("FCRA"), §§ 1681-1681u, and as to their defamation claim brought against U.S. Bank. Accordingly, Experian's Motion for Summary Judgment is moot and the Court grants U.S. Bank's Motion for Partial Summary Judgment. For the reasons outlined below, the Court grants in part and denies in part Trans Union's Motion for Summary Judgment

## Background

Trans Union is a consumer reporting agency. As a consumer reporting agency, Trans Union collects credit information provided to it by other sources and generates consumer reports that are then given to consumers or others. Trans Union also maintains the credit files of millions of consumers.

When a consumer disputes the veracity of the information compiled by Trans Union, Trans Union investigates the dispute using one of two systems developed for the purpose of processing and tracking disputes: the Consumer Dispute Verification process ("CDV") and the Automated Consumer Dispute Verification process ("ACDV"). The CDV process involves Trans Union contacting the party that is providing the disputed information (the "Furnisher"). Trans Union asks the party to verify certain personal information regarding the consumer and to verify the accuracy of the financial information being reported to Trans Union.

If the Furnisher verifies the information, Trans Union maintains the information as it exists in Trans Union's database. If the Furnisher reports that the information is inaccurate, Trans Union either deletes the information from the consumer's credit file or modifies that information. Trans Union then notifies the consumer of the results of the investigation.

On February 26, 2002, Plaintiffs received notice that their application for a line of credit at Sam's Club had been denied because of bankruptcy proceedings that had been reported to Sam's Club by Experian, a consumer reporting agency. Thereafter, Plaintiffs contacted Experian and U.S. Bank, the provider of the loan that was purportedly dissolved in the bankruptcy proceeding, to have the information regarding the bankruptcy removed from Plaintiff's credit history. At one time, Plaintiffs had an auto loan with U.S. Bank, but Plaintiffs had never filed for bankruptcy or been late with any of their payments on the loan. In fact, Plaintiffs paid off the loan earlier than was expected under the terms of the loan agreement. Plaintiffs assert that U.S. Bank told them that it had notified all of the credit reporting agencies of the error.

On April 16, 2002, June Nielsen requested a copy of her consumer report from Trans Union. Despite U.S. Bank's previous assurances, the report still contained the reference to the bankruptcy. On April 22, 2002, June Nielsen contacted Trans Union via telephone. During the telephone call, she disputed the veracity of the bankruptcy notation. Thus, Trans Union initiated an investigation of the accuracy of the information.

On April 23, 2002, Trans Union submitted a CDV to U.S. Bank. In the CDV, Trans Union advised U.S. Bank of the nature of June Nielsen's dispute. The CDV stated, in part, "Acct reaffirmed or not included in Bkrpcy. Update Consumer Info Indictr, Acct Status, Curr Bal and Pymt Hist Profile." (Affidavit of Eileen Little ("Little Aff."), ¶ 15, Ex. 1.)

U.S. Bank returned the CDV to Trans Union stating that Trans Union should "change data as shown" but without any direction as to how the U.S. Bank account's information should be changed. (Little Aff., ¶ 16, Ex. 1.) Because U.S. Bank did not provide specific information regarding the account, Trans Union deleted the entire U.S. Bank account from June Nielsen's

consumer credit report.  Trans Union mailed June Nielsen the results of its investigation on May 17, 2002.

Kent Nielsen claims that he contacted Trans Union in either March or April of 2002 regarding the erroneous information.  Kent Nielsen asserts that Trans Union took no action with regard to his request for an investigation.  Trans Union denies that this contact ever took place.

On July 3, 2002, Kent Nielsen contacted Trans Union to request a copy of his credit report after he was denied credit while attempting to obtain an automobile loan.  He claims that the car dealership had run a credit report and that the report contained the erroneous bankruptcy notation.  However, the credit report that Kent Nielsen received from Trans Union contained information regarding the U.S. Bank loan, but did not contain information regarding the purported bankruptcy.

## Discussion

### I.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial.  *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**II.     Trans Union's Motion for Summary Judgment**

    **A.     FCRA Section 1681i**

Section 1681i(a) of the FCRA sets forth the procedure that consumer reporting agencies must follow when conducting consumer information investigations.[1]  Section 1681i(a) states:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

Paragraph five provides that after the investigation takes place, if "an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting

---

[1] At various points in their brief, Plaintiffs refer to a consumer reporting agency's duty pursuant to 15 U.S.C. § 1681e to maintain reasonable procedures to assure maximum possible accuracy concerning information contained in consumer reports.  Plaintiffs' reliance on Section 1681e is misplaced for two reasons.  First, Plaintiffs have never alleged that Trans Union violated Section 1681e.  Second, the duty to reinvestigate imposed by 15 U.S.C. § 1681i is more stringent than the duty set out in Section 1681e.  *See Sarver v. Experian Information Solutions, Inc.,* 299 F. Supp. 2d 875, 877 n.1 (N.D. Ill. 2004).

agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation."

### 1. Kent Nielsen's FCRA Section 1681i Claim

Kent Nielsen asserts that he initially contacted Trans Union in March or April of 2002 regarding the erroneous bankruptcy notation. He claims that when he contacted Trans Union, he requested that Trans Union investigate the bankruptcy notation. Trans Union denies that Kent Nielsen ever contacted it before July 3, 2002. When Kent Nielsen contacted Trans Union in July, Trans Union asserts that he merely requested a copy of his consumer report. Trans Union sent Kent Nielsen a copy of his consumer credit report the same day that he made the request.

Trans Union contends that Kent Nielsen lacks standing to bring a Section 1681i claim because he never initiated a dispute. Trans Union points out that in his deposition, Kent Nielsen only testified that he "believes" he contacted Trans Union in April or March 2002. Trans Union also points out that Kent Nielsen responded to its interrogatories by stating that his first contact with Trans Union was as a result of his denial of credit in July 2002.

Based on a review of Kent Nielsen's deposition testimony and his answers to Trans Union's interrogatories, the Court finds that he lacks standing to bring a Section 1681i claim. In order to raise a genuine issue of material fact, Kent Nielsen needed to definitively allege that he requested that Trans Union investigate the U.S. Bank account. He failed to do so. Therefore, the Court grants Trans Union's Motion for Summary Judgment as to Kent Nielsen's FCRA claim because "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

### 2. June Nielsen's FCRA Section 1681i Claim

June Nielsen asserts that Trans Union violated Section 1681i when it was made aware of the fact that at least some of the information regarding the U.S. Bank account was inaccurate, but failed to gather further evidence to determine what information in the account needed to be modified. She contends that Trans Union's deletion of the U.S. Bank account as a whole was inappropriate because the effect of deleting the account was to delete the "positive" credit associated with paying off the U.S. Bank loan prior to its due date.

Trans Union asserts that the term "item of information" as it appears in the FCRA refers to an entire tradeline, or account, and not to individual pieces of information within a particular tradeline. Therefore, Trans Union contends that it was required by law to delete the entire U.S. Bank tradeline from June Nielsen's credit report because it was aware that at least some of the information contained in the U.S. Bank tradeline was inaccurate.

The Court finds that summary judgment is not appropriate with regard to June Nielsen's FCRA Section 1681i claim against Trans Union. The Court agrees with Trans Union that the term "item of information" as it appears in the FCRA can refer to an entire tradeline. The Court also agrees with Trans Union insofar as the deletion of an entire tradeline may be appropriate in certain circumstances. However, the Court finds that the term "item of information" can refer to specific pieces of information within a tradeline and that the deletion of entire tradelines may not be the appropriate remedy in every situation.

Congress recognized that the deletion or modification of account information could have a major impact on an individual's credit history. Therefore, Congress required that the modification or deletion of items of information be "appropriate" given the situation. *See*

Section 1681i(a)(5).  In this case, the Court finds that the determination of whether Trans Union's actions were "appropriate" is one for a jury given the following facts:  (1) Trans Union was aware that the bankruptcy notation was the only piece of information disputed by June Nielsen; (2) Trans Union received a response to its request for information from U.S. Bank stating that modifications to the account's information was necessary; and (3) Trans Union was aware that the deletion of the entire U.S. Bank account from June Nielsen's credit history would result in a loss of "positive" credit.  Accordingly, the Court denies Trans Union's Motion for Summary Judgment as to June Nielsen's FCRA Section 1681i claim.

### B. FCRA Section 1681n

Plaintiffs contend that Trans Union "willfully" violated Section 1681i, subjecting Trans Union to liability under Section 1681n.  Section 1681n provides that any consumer reporting agency or user of information which "willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."  15 U.S.C. § 1681n.  Trans Union denies that it violated Section 1681n.

The Court has reviewed the record before it and finds that Plaintiffs have failed to present any evidence showing that Trans Union "knowingly and intentionally committed an act in conscious disregard for the rights of others."  *Phillips v. Grendahl,* 312 F.3d 357, 368 (8th Cir. 2002).  Thus, summary judgment is granted as to Plaintiffs' Section 1681n claim.

### C. State Law Defamation Claim

Plaintiffs also contend that Trans Union is liable for common law defamation.  Trans Union asserts that it is entitled to qualified immunity from this claim.  FCRA Section 1681h(e) provides qualified immunity for credit reporting agencies from defamation claims absent a


showing that the credit reporting agency furnished the false information to others with malice, or willful intent to injure the parties about whom the information was being provided. *See Thornton v. Equifax, Inc.,* 619 F.2d 700, 703 (8th Cir. 1980).

Plaintiffs assert that the failure of Trans Union to properly investigate Plaintiffs' claim resulted in Trans Union issuing Plaintiffs' credit report with reckless disregard for the truth. Trans Union contends that Plaintiffs have failed to present any evidence that Trans Union's actions were motivated by malice or the willful intent to injure.

The Court finds that summary judgment is appropriate as to Plaintiffs' defamation claims against Trans Union. The malice or willful intent to injure required to establish a claim under 1681h(e) is of a higher degree than that required to establish a 1681n claim. *See Reed v. Experian Information Solutions, Inc.,* 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004). As previously stated in the Court's analysis of the 1681n claim, the Court finds that Plaintiffs have failed to present evidence that Trans Union's actions were motivated by malice or the willful intent to injure. Accordingly, the Court grants Trans Union's Motion for Summary Judgment as to this claim.

## Conclusion

The Court believes it is in the best interests of the parties to negotiate a resolution of this dispute among themselves. As the parties are already aware, Magistrate Judge Raymond L. Erickson is available to assist in the negotiation of a settlement should the parties find such services helpful. If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan Frank at 651-848-1296, or Vicki Miller, Calendar Clerk for Magistrate Judge Raymond L. Erickson at 218-529-3520.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant U.S. Bank's Motion for Partial Summary Judgment (Doc. No. 28) is **GRANTED.**

2. Defendant Experian Marketing Solutions, Inc.'s Motion for Summary Judgment (Doc. No. 32) is **DENIED AS MOOT.**

3. Defendant Trans Union, LLC's Motion for Summary Judgment (Doc. No. 43) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. Defendant Trans Union, LLC's Motion for Summary Judgment is **GRANTED** as to Plaintiff Kent Nielsen's FCRA Section 1681i claim.

   b. Defendant Trans Union, LLC's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Kent and June Nielsen's FCRA Section 1681n claim.

   c. Defendant Trans Union, LLC's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Kent and June Nielsen's defamation claim.

   d. Defendant Trans Union, LLC's Motion for Summary Judgment is **DENIED** as to Plaintiff June Nielsen's FCRA Section 1681i claim.


Dated:  January 26, 2005         s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court